Slip Op. 19-15

## UNITED STATES COURT OF INTERNATIONAL TRADE

<table>
<tr><td>

MACLEAN POWER, L.L.C.,

Plaintiff,

v.

UNITED STATES,

Defendant.

</td><td>

Before: Jane A. Restani, Judge

Court No. 17-00265

</td></tr>
</table>

### OPINION

[Commerce's scope ruling remanded to exclude plaintiff's pole line hardware from scope of antidumping duty order.]

Dated: January 30, 2019

Lawrence R. Pilon and Thomas M. Keating, Hodes Keating & Pilon, of Chicago, Ill., for Plaintiff MacLean Power, L.L.C.

Eric J. Singley, Trial Attorney, Civil Division, U.S. Department of Justice, of Washington D.C., for the defendant.  With him on the brief were Joseph H. Hunt, Assistant Attorney General, Jeanne E. Davidson, Director, and Claudia Burke, Assistant Director.  Of counsel on the brief was Caroline D. Bisk, Attorney, U.S. Department of Commerce, of Washington, D.C.

**Restani, Judge:**  This action challenges a final scope ruling issued by the United States Department of Commerce, International Trade Administration ("Commerce") regarding MacLean Power, L.L.C. ("MacLean")'s pole line hardware.  MacLean moves for judgment on the administrative record, seeking a holding that Commerce's determination that its pole line hardware fall within the antidumping order on certain helical spring lock washers ("HSLWs") from the People's Republic of China ("PRC") is unsupported by substantial record evidence or otherwise not in accordance with the law.  See Mem. L. Supp. Pl. MacLean Power, L.C.C.'s Rule 56.2 Mo. J. Agency Record, Doc. No. 26-1 ("MacLean Br.").  Accordingly, MacLean seeks

exclusion from the scope of the antidumping duty order.  MacLean Br. at 32–33.  Commerce

opposes MacLean's motion.  For the following reasons, MacLean's motion is granted.

## BACKGROUND

On November 23, 1993, Commerce published an antidumping duty order covering

certain HSLWs from the PRC.  See Antidumping Duty Order: Certain Helical Spring Lock

Washers from the PRC, 58 Fed. Reg. 53,914 (Dep't Commerce Oct. 19, 1993); Amended Final

Determination and Amended Antidumping Duty Order: Certain Helical Spring Lock Washers

from the PRC, 58 Fed. Reg. 61,859 (Dep't Commerce Nov. 23, 1993) (the "Order").  Commerce

defined the scope of certain HSLWs as follows:

> [C]ertain HSLWs are circular washers of carbon steel, of carbon alloy steel, or of
> stainless steel, heat-treated or non heat-treated, plated or non-plated, with ends
> that are off-line. HSLWs are designed to: (1) Function as a spring to compensate
> for developed looseness between the component parts of a fastened assembly; (2)
> distribute the load over a larger area for screws or bolts; and (3) provide a
> hardened bearing surface. The scope does not include internal or external tooth
> washers, nor does it include spring lock washers made of other metals, such as
> copper. The lock washers subject to this investigation are currently classifiable
> under subheading 7318.21.0000 of the Harmonized Tariff Schedule of the United
> States (HTSUS). Although the HTSUS subheadings are provided for convenience
> and customs purposes, our written description of the scope of this investigation is
> dispositive.

58 Fed. Reg. at 61,859.  The Order does not mention HSLWs imported as assembled into other

merchandise or as a part of a set or kit containing multiple items.

On October 11, 2016, MacLean Power, L.L.C. ("MacLean"), a manufacturer of products

used by utilities for building transmission and distribution lines and substations, filed a request

with Commerce for a scope ruling that its various pole line hardware products, which contain

HSLWs as component parts, were outside of the scope of the Order.  Scope ruling request of

MacLean Power, L.L.C., Pole Line Hardware Helical Spring Lock Washers from PRC (A-570-

822), P.D. 1 (Oct. 11, 2016) ("Scope Ruling Request").  MacLean's pole line hardware products

include clamps and line post studs used "to attach, support, and secure the cables, wires, and

related components that carry power, telephone, internet, and cable television signals in above-

ground pole-based systems [(i.e., utility poles)]."  Scope Ruling Request at 3.  The clamps are

combinations of steel clamping cups or jaws, attached to bolts or studs that are fastened with

HSLWs and nuts.  See id. at 3–6.  The line studs include steel pins that attach to a HSLW, a

square or hex nut, and a locknut.[1]  Id. at 7.  In each of MacLean's pole line hardware products,

the HSLWs form only one part of a multi-part assembled good.  MacLean imports and sells its

pole line hardware as assembled.  See MacLean Power's Resp. to the Department's 03/15/2017

Req. for Additional Information, A-570-822, P.D. 12 at Ex. AA (May 11, 2017).  No comments

on the Scope Ruling Request were filed by interested parties.

Commerce issued a final scope ruling on October 5, 2017, concluding that MacLean's

HSLWs, as a component of pole line hardware, fell within the scope of the Order.  Final Scope

Ruling On MacLean Power, L.L.C.'s Pole Line Hardware Products, A-570-822, P.D. 18 at 8–10

(Oct. 5, 2017) ("Scope Ruling").  Commerce asserts it used its "discretion to determine that [the

pole line hardware was] a set of related products [that were] merely a combination of subject and

non-subject merchandise, and not a unique product."  Id. at 10.  Thus, Commerce further

asserted, "[b]ecause the [HSLWs] [were] included in a mixed media item that includes a mixture

of potentially subject merchandise and non-subject merchandise," it used the mixed media

analysis outlined in Mid Continent Nail Corp. v. United States, 725 F.3d 1295 (Fed. Cir. 2013).

Id. at 7.  In accordance with the purportedly applicable analysis for "mixed media" items

articulated in Mid Continent, Commerce first found that the HSLWs were subject merchandise

---

[1] Images of the pole line hardware as submitted to Commerce are available in an appendix to this
opinion.  See Scope Ruling Request at 3–7.

"as outlined in the literal terms of the [Order]." Id. at 9. Commerce then determined that the

inclusion of HSLWs into pole line hardware should not exclude them from the scope of the

Order. Id. Commerce found "no basis in the language of the order" or "other scope-related

sources" to exclude HSLWs when incorporated into pole line hardware. Id. at 9–10.

MacLean challenges Commerce's determination that the imported pole line hardware

constituted a mixed media product. MacLean argues that Commerce's characterization of its

imported goods as "mixed media" is unsupported both by record evidence and Commerce's prior

mixed media determinations. MacLean Br. at 19–24. MacLean contends that the Department's

reliance on Mid Continent is misplaced because the HSLWs included in MacLean's pole line

hardware are components of a unique good as opposed to mixed media items, and therefore a

mixed media approach like that taken in Mid Continent is inapplicable. Id.

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to 28 U.S.C. § 1581(c). The court has authority to

review "whether a particular type of merchandise is within the class or kind of merchandise

described in an . . . antidumping or countervailing duty order." 19 U.S.C. § 1516a(a)(2)(B)(vi).

Commerce's final scope determination will be upheld unless it is "unsupported by substantial

evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i).

## DISCUSSION

### I.    Legal Framework

After an antidumping duty order is published, importers may seek "'scope rulings' that

clarify the scope of an order . . . with respect to particular products." 19 C.F.R. § 351.225(a), (c).

In making a typical scope determination, Commerce follows a sequential analysis. Commerce

must first analyze the language of the antidumping order itself and determine if the product is

covered by the order.  See Duferco Steel, Inc. v. United States, 296 F.3d 1087, 1097–98 (Fed.

Cir. 2002) (stating that the language of an order is the "cornerstone of [a court's] analysis" of an

order's scope).  If the language of the order is ambiguous regarding the product at issue,

Commerce next considers the (k)(1) factors, which include "[t]he descriptions of the

merchandise contained in the petition, the initial investigation, and the determinations of

[Commerce] (including prior scope determinations) and the Commission."  19 C.F.R. §

351.225(k)(1).  If these sources are sufficient to determine that the product falls within the scope

of the order, a final scope ruling is issued.  Tak Fat Trading Co. v. United States, 396 F.3d 1378,

1382 (Fed. Cir. 2005).  However, if the sources in (k)(1) are not dispositive, Commerce must

consider the additional (k)(2) factors, which are "(i) [t]he physical characteristics of the product;

(ii) [t]he expectations of the ultimate purchasers; (iii) [t]he ultimate use of the product; (iv) [t]he

channels of trade in which the product is sold; and (v) [t]he manner in which the product is

advertised and displayed."  19 C.F.R. § 352.225(k)(2).

        Although courts grant significant deference to Commerce's interpretation of its own

orders, Commerce "cannot 'interpret' an antidumping order so as to change the scope of that

order, nor can Commerce interpret an order in a manner contrary to its terms."  See Duferco

Steel, 296 F.3d at 1095 (quoting Eckstrom Indus., Inc. v. United States, 254 F.3d 1068, 1072

(Fed. Cir. 2011)).  Moreover, "orders may be interpreted as including subject merchandise only

if they contain language that specifically includes the subject merchandise or may be reasonably

interpreted to include it."  Id. at 1089.

## II.    MacLean's Pole Line Hardware

        Commerce incorrectly determined that the HSLWs in MacLean's pole line hardware fall

within the scope of the Order because the HSLWs were neither imported alone nor as part of a

set or kit, but rather as unique assembled products.  An antidumping duty order reflects a

determination by Commerce that a "subject merchandise is being, or is likely to be, sold in the

United States at less than its fair value."  19 U.S.C. § 1673d(a)(1); See also Duferco Steel, 296

F.3d at 1096 ("Commerce's final determination reflects the decision that has been made as to

which merchandise is within the final scope of the investigation and is subject to the order.").

The term "subject merchandise" is defined as "the class or kind of merchandise that is within the

scope of an investigation, a review, a suspension agreement, [or] an order."  19 U.S.C.

§ 1677(25).  Thus, Commerce is required to determine whether the product as imported falls

under the "class or kind of merchandise" encompassed by the language of the order.  See Smith

Corona Corp. v. United States, 915 F.2d 683, 685 (Fed. Cir. 1990).

        It is an ancient principle of "customs law that '[i]n order to produce uniformity in the

imposition of duties, the dutiable classification of articles imported must be ascertained by an

examination of the imported article itself, in the condition in which it is imported.'"  Ford Motor

Co. v. United States, 254 F. Supp. 3d 1297, 1317 (CIT 2017) (quoting Worthington v. Robbins,

139 U.S. 337, 341 (1891)).  While the issue before the court is not one of classification, the duty

to consider the merchandise in the condition in which it is imported applies to additional unfair

trade duties.  It is the merchandise as imported that is judged in relation to the term of the order,

which for these purposes substitutes for tariff classification terms.

        MacLean's pole line hardware, although it contains HSLWs, is imported as distinct

assembled products for use in the attachment of cables and wires onto utility poles.  Commerce

provides no support for its failure to treat the pole line hardware as unique manufactured

products.  Commerce did not decide whether the pole line hardware, as assembled, falls under

the class or kind of merchandise contemplated in the language of the Order.  It did not analyze

the components of the pole line hardware to determine whether they were parts of sets or separate dutiable items.  Had it done so, the outcome would have been different.

Here, the language of the Order covered HSLWs imported individually and makes no mention of the importation of HSLWs as assembled as a component of a larger product.  See 58 Fed. Reg. at 61,859.  The Order gives further guidance by stating that the subject HSLWs "are currently classifiable under subheadings 7318.21.0000, 7318.21.0030, and 7318.21.0090 of the [Harmonized Tariff Schedule of the United States ("HTSUS")]."[2]  Scope Ruling at 2.  Those eo nomine designations refer plainly to "spring washers and other lock washers."  See HTSUS 7318.21.00.  Moreover, at the time of the Order, the HTSUS contained a subheading, not referenced in the Order, for "Bolts and bolts and their nuts or washers entered or exported in the same shipment."  See HTSUS 7318.15.20.  At minimum, this indicates an awareness that HSLWs may be attached to their bolts, along with nuts or other hardware components, suggesting that the language of the order was not intended to include washers entered as assembled with threaded fasteners, such as bolts.  Indeed, as MacLean argues, Commerce did not provide an explanation as to why the pole line hardware would be distinguished from "all manner of other manufactured goods that are held together with threaded fasteners secured by HSLWs."  See MacLean Br. at 19.  The Order covers washers, not assembled items that include washers, whether those assemblies are pole line hardware, refrigerators, automobiles, or airplanes.  Accordingly, Commerce failed to support by substantial evidence the determination that the pole line hardware were not unique products.

---

[2] HTSUS Heading 7318 provides for "Screws, bolts, nuts, coach screws, screw hooks, rivets, cotter, cotter pins, washers (including spring washers) and similar articles, or iron or steel."  See HTSUS 7318.

In reaching its erroneous conclusion, Commerce treated the washers as part of a kit or set, such that the "two-part" analysis outlined in <u>Mid Continent</u> would be applicable.[3]  The scope ruling in <u>Mid Continent</u> concerned sets or kits of subject and non-subject merchandise "packaged and imported together."  725 F.3d at 1298.  That court built its reasoning on Commerce's prior treatment of similarly packaged goods.  <u>See, e.g.</u>, <u>Final Scope Ruling: Antidumping Duty Order on Certain Tissue Paper from the PRC</u>, A-570-894 (Sept. 19, 2008) ("Walgreen Scope Ruling") (tissue paper packaged in gift bag sets and gift bag wrap kits); <u>Final Scope Ruling-Antidumping Duty Order on Certain Cased Pencils from the PRC--Request by Fiskars Brands, Inc.</u>, A-570-827 (June 3, 2005) (a pencil attached to a drawing compass); <u>Final Scope Ruling-Antidumping Duty Order on Certain Cased Pencils from the PRC--Request by Target Corporation</u>, A-570-827 (Mar. 4, 2005) (pencils in a portable plastic case that also included markers, crayons, and paper).

Here, however, <u>Mid Continent</u> and the "mixed media" cases are not instructive because the pole line hardware, as discussed above, are assembled items composed of HSLWs and other hardware to create a unique product.[4]  This multipart assembly into a distinct product with a specific purpose distinguishes the pole line hardware from the tool box in <u>Mid Continent</u> and

---

[3] Commerce put the cart before the horse.  It began a "mixed media" analysis by drawing language from <u>Mid Continent</u> that such an analysis is applicable where a "potentially subject merchandise is included in a mixed media item that includes a mixture of potentially subject merchandise and non-subject merchandise."  Scope Ruling at 7 (quoting <u>Mid Continent</u>, 725 F.3d at 1302).  That language is not useful for deciding what the imported item is, as it presupposes that the product in question is appropriately considered a "mixed media" item.  Before applying the various guidance in <u>Mid Continent</u>, Commerce was first required to address the pole line hardware as imported in its assembled condition.

[4] In upholding the determination that tissue paper was within the scope of the order, the Court of Appeals for the Federal Circuit in <u>Walgreen Co. v. United States</u> observed that "the components of the gift bag sets did not interact in any way or otherwise represent a unique product."  620 F.3d 1350, 1356 (Fed. Cir. 2010).  Commerce considered the gift bag items "to be individual items simply packaged together" and "could be used independently of one another and at different times."  Walgreen Scope Ruling at 11.

from other mixed media items.  Commerce unconvincingly attempts to equate MacLean's pole

line hardware with the household tool kits.  It asserted that a "mixed media" analysis was

appropriate because:

> [a]s in *Mid Continent*, here, the HSLWs were unmodified and clearly remain
> HSLWs in appearance; likewise, the nails at issue in *Mid Continent* were
> unmodified and remained nails in appearance.  Neither product was welded or
> adhere in any way to non-subject merchandise.  In fact the HSLWs are easily
> separated from non-subject merchandise; likewise, the nails were also easy to
> separate from the non-subject merchandise.

Scope Ruling at 8.  Although Commerce found the HSLWs, like the tool box nails, to be

"unmodified," "not welded or adhered" and "easily separated" from the rest of the hardware, it

failed to address the fact that, unlike the nails in Mid Continent, the HSLWs are assembled into

clamps and studs, interact with the other parts of the clamps and studs, and are not sold for use

independent of the other component pieces.[5]  See Scope Ruling Request at 3–7, 12–13.

Moreover, the HSLWs subject to the Order are designed to function as a spring to compensate

for looseness in a fastened assembly, distribute load for screws and bolts, and provide a hardened

bearing surface.  Scope Ruling at 2.  Thus, by definition, they will not be found modified,

welded, or adhered in any way to non-subject merchandise.  Commerce's use of such factors to

find the pole line hardware analogous to tool kits was unreasonable.  A tool box retains its

essential character when it excludes nails, as do the nails by themselves.  But the HSLWs at issue

here are not alleged to be imported for use in anything other than the pole line hardware.[6]  The

---

[5] Nothing in the record suggests some economic rationale for treating these products
disassembled when they are imported assembled.

[6] If an interested party believes that the products containing HSLWs are actually intended for
another purpose, then anti-circumvention statutes may provide remedies for the risks that
component pieces are imported as assembled only to avoid anti-dumping or countervailing duty
orders.  See 16 U.S.C. § 1677j.  Additionally, interested parties can file a petition for an
antidumping investigation and order that includes broader terms, including HSLWs as assembled

pole line hardware cannot perform their intended functions without the HSLWs, or the remainder

of their components functioning together.  Because the pole line hardware products cannot

reasonably be considered HSLWs themselves or sets or kits containing HSLWs, their HSLWs do

not fall under the scope of the Order.[7]

## CONCLUSION

For the foregoing reasons, MacLean's motion for judgment on the agency record is

GRANTED.   The matter is remanded for Commerce to issue a determination that the HSLWs

incorporated into MacLean's pole line hardware are excluded from the scope of the Order.

Commerce shall file its remand redetermination with the court on or before 45 days of the

issuance of this opinion.  As there is no new action possible that could require further briefing,

the court does not set a further schedule, but will enter judgment upon receipt of the conforming

determination.



                                                                /s/ Jane A. Restani
                                                                Jane A. Restani, Judge


Dated: January 30, 2019
          New York, New York



_____

into larger hardware, if those are the items being sold at less their fair value.  See 19 U.S.C.
§ 1673a.

[7] No party has alleged that there is a conflict between the scope language and any of the (k)(1)
sources.  In fact, the International Trade Commission determination makes it clear that the
corresponding domestic industry makes helical spring lock washers.  Certain Helical Spring
Lockwashers from the [PRC] and Taiwan, USITC Pub. No. 2526, Inv. Nos. 731-TA-624 & 625
(Preliminary) (October 1992) at I-9.